# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

---

| | |
|---|---|
| CHALLENGE MFG. COMPANY, LLC, a Delaware limited liability company, | Case No. |
| Plaintiff, | Hon. |
| v. | |
| HARTFORD FINISHING, LLC, a Wisconsin limited liability company, | |
| Defendant. | |

Christopher J. Schneider (P74457)
Jacob L. Carlton (P84859)
Miller Johnson
Attorneys for Plaintiff
45 Ottawa Ave. SW, Suite 1100
Grand Rapids, MI  49503
(616) 831-1700
schneiderc@millerjohnson.com
carltonj@millerjohnson.com

**COMPLAINT FOR INJUNCTIVE RELIEF,
SPECIFIC PERFORMANCE AND DAMAGES**

Plaintiff, Challenge Mfg. Company, LLC ("Challenge"), for its Complaint states:

## Overview

1. Challenge is facing an urgent situation with its supply chain to PACCAR, one of the largest manufacturers of trucks in the world, because Hartford Finishing, LLC ("Hartford") has refused to provide Challenge's requirements of e-coated and powder coated floor assemblies (the "Part").  As a result, Challenge will be unable to meet its supply obligations to PACCAR. Based on the most recent information, PACCAR's production likely will be impacted this week

and again within three weeks. Hartford needs to immediately supply, and continue supplying, Challenge's requirements of the Part in order to prevent the irreparable harm that will occur if PACCAR's production lines are shut down.

2. Hartford supplies the Part to Challenge in accordance with Challenge's blanket purchase order number 8-012175 dated March 31, 2021 (the "Blanket PO"), which incorporates Challenge's Terms and Conditions (the "Terms"). (**Exhibit 1**.)

3. Under the Blanket PO and the Terms, Hartford is obligated to supply Challenge's requirements of the Part for the life of the vehicle program, and the contract price is firm for the life of the vehicle program.

4. Despite its obligations under the Blanket PO, Hartford has repeatedly demanded price increases under threat to the supply chain, including demands in July 2021 and January 2022.

5. Challenge offered to accept the first price increase, which Hartford demanded in July 2021, with the new pricing effective on January 1, 2022. Hartford refused to accept this price increase. Instead, it demanded a second (and greater) price increase effective on January 15, 2022.

6. Challenge has not agreed to Hartford's second price increase demand.

7. However, in an effort to mitigate its damages and avoid the need for emergency injunctive relief, on February 4, 2022, Challenge provided, under written protest, an updated blanket purchase order that reflects Hartford's second price increase demand (the "Under Protest Blanket PO").

8. Hartford rejected the Under Protest Blanket PO on February 4, 2022. That same day, Hartford informed Challenge in a telephone call after the close of business that Hartford will

only produce Parts on a spot-buy basis, in breach of its clear contractual obligations to supply Parts for the life of the program.

9. Again, Challenge tried to mitigate its damages and avoid the need for injunctive relief by issuing spot-buy purchase orders under protest. But Hartford would only agree to supply the 144 Parts that it had on hand as of Monday, February 7, 2022. In a telephone call on that same day, Hartford would not agree to accept future orders from Challenge and instead told Challenge to find a new supplier.

10. In other words, Hartford conditioned supply of the Parts on Challenge changing the Blanket PO—which is a fixed-price requirements contract for the life of the vehicle program—into spot buy orders subject rejection or higher prices on Hartford's whim. And when Challenge provided a spot buy PO under protest, Hartford refused to commit to supplying anything beyond the 144 Parts that it had on-hand and told Challenge to find a new supplier.

11. If Hartford fails to continue supplying Parts to Challenge in accordance with the Blanket PO, PACCAR will be out of Parts within approximately three weeks, causing its production lines to shutdown thereafter.

12. Challenge files this Complaint and accompanying motion for a preliminary injunction to prevent this irreparable harm.

## The Parties

13. Challenge is a Delaware limited liability company with its principal place of business located in Walker, Michigan.

14. Challenge is a tier 1 automotive supplier that supplies vehicle assemblies to OEMs around the world, including PACCAR. PACCAR is one of the largest truck manufacturers in the world, producing trucks under the Kenworth, Peterbilt, and DAF brands.

3

15. Challenge's sole member is a Delaware limited liability company with its principle place of business in Walker, Michigan.

16. Hartford Finishing LLC, formerly known as Hartford Finishing Inc. ("Hartford") is a Wisconsin limited liability company with its principal place of business located in Hartford Wisconsin.

17. Hartford is one of the largest industrial coaters in the Midwest and provides e-coating and powder coating for Challenge's parts.

18. Upon information and belief, none of Hartford's members are Michigan residents.

### Jurisdiction and Venue

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1132.

20. The amount in controversy exceeds $75,000.

21. Venue is proper in this Court because the events giving rise to this dispute occurred in Grand Rapids, Michigan. Additionally, the parties contractually agreed that venue is proper in this Court. **Exhibit 1.**

22. This Court has personal jurisdiction over Hartford because it transacts business in Michigan and consented to jurisdiction in this Court. **Exhibit 1.**

### Factual Allegation

23. On January 5, 2021, Challenge and Hartford began discussing whether Hartford would be able to supply Challenge with the Part for PACCAR.

24. Over the next few weeks, Challenge and Hartford exchanged information and negotiated the price of the Part.

25. On January 28, 2021, Mark Voelz, a sales representative for Hartford, informed Challenge that there would be "an additional cost savings of $3.60 per part if we can work out a 3 year agreement." **Exhibit 2.**

26. On the same day, Challenge responded, "If the parts were to be awarded to you, ***our contract would be for the life of the program***, in this case I believe the life is way longer than 3 years. As you know life of program is subject to OEM's discretion, so this 'commitment' is not something Challenge's terms and conditions honor, but I don't foresee an issue if the length of the program is what you are concerned about." *Id* (emphasis added).

27. Hartford did not object to a life of the program contract. Instead, Hartford responded that it "talked with the team about an idea on how to lower the piece price year over year instead of having a firm 3 year commitment." **Exhibit 3.**

28. On March 19, 2021, Challenge provided Hartford a copy of the Terms and other new supplier documents as part of their new supply relationship. **Exhibit 4.**

29. On March 26, 2021, Hartford indicated that the Terms "are being reviewed." *Id.*

30. On March 30, 2021, Hartford asked Challenge for net 45 day payment terms. Hartford commented, "I think this is the only thing I need to get the signature on the supplier application."

31. Accordingly, on March 31, 2021, Challenge issued, and Hartford accepted, Blanket Purchase Order 8-012175 (the "Blanket PO"). **Exhibit 5**.

32. The Blanket PO incorporates the Terms, which are available at www.challenge-mfg.com/about/suppliers. **Exhibit 1.**

33. The Terms provide, "The Program covered by the Order has an estimated life (the "Life of the Program"). Unless a specific term is otherwise set forth on the Order, *the term of the Order shall be for the Life of the Program*."  **Exhibit 1 § 2 (emphasis added).**

34. The Terms provide, "Pricing shall be as set forth in the Order *and shall be firm for the Life of the Program covered by the Order*..."  **Exhibit 1 § 3 (emphasis added).**

35. On July 27, 2021, less than four months after Hartford accepted the Blanket PO, Hartford demanded a price increase, stating "Our plan is to honor the existing price increase through the end of August and then we will need to reference the updated quote we had sent over." **Exhibit 6.**

36. While the parties were still discussing Hartford's requested price increase, on December 16, 2021, Hartford demanded another price increase. Hartford informed Challenge that "Updated pricing will be forwarded that will take effect 1/1/22. **Exhibit 7.**

37. Challenge responded, "as previously mentioned, Challenge will only be able to update pricing to the original increase by 1/1/2022."

38. But Hartford would not accept its original price increase. Instead, it responded: "The previous updated quote has expired. . . . We will get the pricing together once the final costs are collected and send an updated quote as soon as possible."

39. On December 22, 2021, Challenge issued an updated Blanket PO offering to accept Hartford's original price increase with an effective date of January 1, 2022. **Exhibit 8.**

40. Despite receiving the updated Blanket PO, on January 6, 2022, Hartford sent a new quote with an even greater price increase stating that "HFI team is implementing this pricing in our system to take effect on 1/15/22." **Exhibit 9.**

41. Challenge responded the same day stating, "Challenge has yet to receive any detailed break downs, or actual cost support from HFI. We have requested to sample a few before and after invoices of raw material which apply to our parts, and have not gotten any at this time. Regardless, Challenge still acted in good faith and updated the pricing to you effective 1/1/2022 without sustenance or material support to validate this ask. Unfortunately, neither Challenge nor the customer will be able to accommodate additional price increase request."

42. On January 6, 2022, Hartford responded saying, "HFI will not be processing additional parts moving forward until we have this resolved."

43. On January 14, 2022, Hartford demanded that Challenge issue an updated PO acknowledging the second price increase before it would supply any more Parts. **Exhibit 10.**

44. On January 19, 2022, Challenge asked Hartford about Parts that would be available for pick up on January 21. **Exhibit 11**

45. On January 25, 2022, Challenge again emailed Hartford stating, "Still waiting on repose [sic] on what is available for pick up from HFI." *Id.*

46. Hartford responded the same day stating, "there is nothing ready for pick up. We have 144 RAW parts here that cannot be processed until we receive the updated PO I've been requesting."

47. On January 31, 2022, Challenge responded asking when Parts would be available for pick up.

48. Hartford did not respond. Challenge asked again on February 1, 2022 if Hartford had any Parts for pick up. *Id.*

49. Hartford again did not respond, and Challenge asked again on February 2, 2022.

50. Hartford responded on February 2, 2022, saying "The schedule is full for the week and ***nothing will be complete***." (emphasis added).

51. Challenge responded the same day, "What does it mean by schedule is full? Ed confirmed last week that parts will continue to be coated – this material has been with you guys for more than a week? Why did no one notify us if this wasn't going to get coated?"

52. Hartford never responded to Challenge's email.

53. On February 4, 2022, Challenge wrote to Hartford again, stating, "In light of potentially impacting [PACCAR] production, we have updated [the] attached purchase order to new price [] under protest with full reservation of rights. Please confirm receipt and agreement to continue processing parts."

54. Hartford rejected this updated blanket purchase order, demanding instead that Challenge issue a spot-buy order

55. On February 6, 2022, Challenge provided Hartford with a separate spot-buy order under written protest for the 144 pieces that Hartford has on hand, to prevent a production shutdown at PACCAR and to avoid the need of emergency litigation.

56. During a telephone call on February 7, 2022 Hartford agreed to produce only the 144 parts it has on hand. Hartford refused to commit to coating any additional Parts and told Challenge to find a new supplier.

57. Even though Hartford has stated it will supply the 144 Parts that it has on-hand, that will not avoid an impact on PACCAR's production. PACCAR will run out of the Parts tomorrow, Tuesday, February 8, 2022. Hartford has told Challenge that it will not be able to supply the 144 Parts until Wednesday, February 9, 2022, which means PACCAR's production will be impacted.

58. Hartford's refusal to comply with its obligations under the Blanket PO threatens additional production impact at PACCAR. If Hartford does not continue to supply Challenge's requirements of the Part, then Challenge will again be unable to supply PACCAR within approximately three weeks.

59. The ripple effect of Hartford's breaches will likely cause PACCAR to stop production shortly thereafter.

60. The harm caused by Hartford's disruption to the supply chain will be immediate, irreparable, and catastrophic.

61. Challenge and PACCAR will likely be forced to shut down production and suffer significant monetary damages.

62. In addition to money damages, Challenge and the PACCAR will suffer irreparable harm. For example, layoffs may result, and supply of PACCAR's vehicles to its customers will be threatened.

63. Media may cover any production shutdown at PACCAR, resulting in an unquantifiable loss of good will and commercial reputation for Challenge and PACCAR.

64. Failure to provide the Part will likely result in irreparable damage to Challenge's relationship with PACCAR.

65. The only way to avoid these catastrophic results is if this Court grants Challenge injunctive relief that requires Hartford to satisfy its contractual obligations to Challenge.

## COUNT I – SPECIFIC PERFORMANCE

66. Challenge restates the foregoing allegations as if fully set forth herein.

67. The Blanket PO and the incorporated Terms are a valid and enforceable contract between Challenge and Hartford.

68. Hartford has materially and substantially breached the contract by refusing to supply Challenge with Challenge's requirements of the Part.

69. Hartford is Challenge's sole source supplier for the Part.

70. Challenge depends on Hartford's consistent and sufficient supply of the Part to meet its obligations to supply assemblies to the PACCAR.

71. Hartford's failure to supply Challenge's requirements of the Part threatens irreparable and catastrophic harm to Challenge and to the supply chain, including PACCAR.

72. Given the unique nature of the supply chain and Hartford's clear obligations under the Blanket PO, specific performance is warranted.

**WHEREFORE**, Plaintiff Challenge Mfg. Company respectfully requests that the Court enter an order of specific performance requiring Hartford to supply Challenge's requirements of the Parts in accordance with the Blanket PO, and award of such other relief as the Court may deem just, equitable, and appropriate under the circumstances.

## COUNT II – INJUNCTIVE RELIEF

73. Challenge restates the foregoing allegations as if fully set forth herein.

74. There is substantial likelihood that Challenge will succeed on the merits of its claims against Hartford.

75. Hartford's failure to perform under the Blanket PO will cause Challenge to suffer irreparable harm.

76. The balance of hardships and the public interest favor issuing an injunction in this case.

77. Challenge is entitled to preliminary and permanent injunctive relief that enjoins Hartford from reneging on its contractual obligations to supply Challenge's requirements of the Part per the terms of the Blanket PO, including the quantity, duration, and price terms.

**WHEREFORE**, Plaintiff Challenge Mfg. Company respectfully requests that the Court order the following relief: (1) Preliminary and permanent injunctive relief that enjoins Hartford from taking any action inconsistent with its obligations under the Blanket PO; (2) Preliminary and permanent injunctive relief under that requires Hartford to supply Challenge's requirements of the Part according to the terms of the Blanket PO; and (3) an award of such other relief as the Court may deem just, equitable, and appropriate under the circumstances.

## COUNT III – BREACH OF CONTRACT

78. Challenge restates the foregoing allegations as if fully set forth herein.

79. Hartford has materially and substantially breached the Blanket PO.

80. Challenge, on the other hand, has satisfied its obligations under the Blanket PO. Indeed, Challenge even offered to increase the price of the Part effective January 1, 2022, despite no obligation to do so. Hartford rejected that offer and demanded an even higher price.

81. As a direct and proximate result of Hartford's material and substantial breaches, Challenge will suffer damages in excess of $75,000 exclusive of interest, costs, and attorney fees.

82. Under the terms of the Blanket PO, Challenge is entitled to recover from Hartford its actual attorney fees and costs incurred in bringing this lawsuit.

**WHEREFORE**, Plaintiff Challenge Mfg. Company respectfully requests that the Court enter judgment against Hartford for damages in an amount to which the trier of fact finds Challenge is entitled, together with an award of interest, costs, and attorney fees.

MILLER JOHNSON

Attorneys for Plaintiff

Dated: February 7, 2022       By    /s/ Christopher J. Schneider
                                          Christopher J. Schneider (P74457)
                                          Jacob L. Carlton (P84859)
                               Business Address:
                                          45 Ottawa Avenue SW, Suite 1100
                                          PO Box 306
                                          Grand Rapids, Michigan 49501-0306
                              Telephone: (616) 831-1700
                                          schneiderc@millerjohnson.com
                                          carltonj@millerjohnson.com